Murray? Good morning. Good morning. May it please the Court, my name is Michael Murray, CJA counsel to Appellant Sammy Page. This case, as the Court is well aware, is here because Judge Walker granted a certificate of appealability after denying Mr. Page's 28 U.S.C. 2241 petition, which was based on his claim that he had been deprived of his Federal constitutional right to a speedy trial by virtue of the fact that he languished in Alameda County for almost six years, waiting for trial on a civil commitment issue under the Sexually Violent Predators Act. The district court considered that single issue. We have briefed two issues, one uncertified, and I would like to address both those issues this morning, if I may. I think the strongest argument on the speedy trial issue is the length of the delay in context. The Supreme Court is very clear, it seems to me, in Barker, that none of the four factors, the length of the delay, the reasons, whether the defendant has requested a trial explicitly and the matter of prejudice are necessary or sufficient in and of any one of them themselves. So I think it's important to consider the length of the delay in context. Here's a man, admittedly, in order to be eligible for consideration under the SVPA, you have to have been in state prison, but he's been in state prison on a sentence of 27 years for an actual 10 years. There's nothing different about Sammy Page's history or his person. The day he is eligible for parole in 1997 when compared to the date of his conviction in 1987. In short, if he had the characteristics of a sexually violent predator, it was certainly apparent to the California Department of Corrections and the Alameda County District Attorney long before December of 1997. The petition to have a probable cause hearing was filed a month before his eligibility for parole. Why was the delay was your client responsible for? Well, I think there's no doubt that my client was at very least acquiescent in delay. Certainly he has to bear the responsibility for at least XA quo up to 1998, November of 1998. And certainly once he assumes his own representation in Alameda County, he must then bear full responsibility for any subsequent delay. But that long interim period, Your Honor, is a period it seems to me, and perhaps this is a jaundiced view, where when we're talking about a two year period of civil commitment at maximum under the statute, we have a man who is for six years in the waiting for an adjudication as to whether he should be committed civilly for two years. We have a term of six years of waiting. I think there's an extraordinary burden on the people in that instance, and with all due respect on the superior court, to move a case like that to adjudication. Now, certainly the district attorneys who filed declarations, and I have no reason to doubt the veracity of those And I'm familiar with those courtrooms. They're very, very busy, and obviously the cases where a defendant is screaming for his day in court are going to take precedence. But there's no indication that Mr. Page, simply because he is simultaneously filing collateral attacks in both State and Federal court, is uninterested in moving his case forward. I mean, it defies simple human logic to think that a person who is going to find out one way or the other, and at least have the clock running on the two years, would malinger in order to leave himself in a state of non-decision for six years. So I submit the prejudice is very great, too. It's not just anguish. It's not just a feeling of impatience. It's a situation where someone has no way to go forward with his life. I mean, let's look at this, and I realize we're not here to determine the constitutionality of the SVPA, but we've got a system that says you're responsible for your acts, so you're going to state prison for 27 years. You're culpable, you understood what you were doing, and you bear responsibility for it. Nothing has changed about the person or the acts he committed, but when he gets to the end of that road, we say to him, you're not mentally competent. We can't trust you to go out and control yourself, right? You have impulse problems. So now we're going to start a civil proceeding that will keep you off the streets. Now, there's a due process system set up to make sure that that's not employed vindictively, but it never kicked in here, and it's easy to take a vexatious litigant like Mr. Page, and in some respects, that's what he is, and say, this man doesn't deserve consideration because he was filing papers elsewhere. That's simply irrelevant, in my humble opinion, to the merits of this case. And even, again, Your Honors, more important, it seems to me, than the certified issue. The 654 issue is, it seems to me, critical when you consider it in the context of the speedy trial delay. Here's a man, self-taught, who's saying these predicate convictions are not valid because of Penal Code Section 654, that I deserve the benefit of that provision in the California law. Bosch says the First District Court of Appeal in People v. Pearson, People v. Benson, two very clear California Supreme Court decisions, where the California Supreme Court in Benson, quoting its own decision in Pearson, says that if a sentence on a conviction has been stayed under 654, that conviction may not be used, okay? And I think this is important language. Subsequent penal or administrative action may not be based on those convictions. That's a State law question, isn't it? Indeed, it is. But Mr. Powell in State court was entitled to the protection of that State law, and he was denied due process by virtue of its not being accorded him. So he did not raise that before Judge Walker, and I concede that. But it was fully litigated in the Court of Appeal in the State, and the issue was exhausted, and I felt that it should be raised here because it's tied so inextricably to the – you know, to the – it seems to me it's easy in our society to take someone who is guilty of heinous acts as someone who comes under the SVPA is, and – and without consciously making this decision to somehow act as if they deserve less under our laws than people who don't commit such acts. I – I think, as in all societies, the way we treat the least of our brethren says a lot about how much we really believe in our laws. And in Benson, the California Supreme Court says the legislature was very careful about saying, say what you want to say, but 654 does not apply under the Three Strikes Law. So in that instance, the protection is not accorded to a defendant in any subsequent penal or administrative action. But that's not the case here. The Six – Welfare and Institutions Code 6600 does not even say, notwithstanding any other provision of law, there's not even a catchphrase. So 654 should apply, and however badly we feel about it societally, this man shouldn't even be caught up in the SVPA process to begin with. But he – he has been in it at this juncture eight years on the basis of one hearing that didn't occur until six years after the petition was filed by the district attorney. And it seems to me that that is a terrible, terrible miscarriage of justice in terms of the – the – the law applying equally to all people who come before courts for adjudication of their claims. And I'd like to save a minute, if I may. Certainly. Thank you. Thank you for your argument, counsel. Thank you very much. We'll hear from the State at this time. Mr. Ott. Good morning. Gregory Ott for Respondent Lockyer. Appellants suggest that the State should have proceeded or commenced its commitment proceedings against him at the outset of his prison commitment back in – well, I think it was 1987. There are several problems with that, not the least of which is that the speedy trial riot attaches only at the time of accusation. That didn't come until 97. He was in – he was in prison on a valid conviction that is not contested here prior to the commitment. Second, he has to be committed for the commitment proceedings to commence, for that filing to take place. It also assumes that the other arguments that appellant is making are true, and that is he assumes that the State caused the delay and would somehow know about the delay and thereby is at fault for commencing the SVP proceedings in 97 as opposed to 87. I would also say that it's not clear that you can stack SVP proceedings or commitments on top of one another before one is complete. Under Petitioner's argument, the State would be commencing SVP proceedings every two years before Petitioner is even eligible for parole. Even if you wait until 1997 or something, we're looking at a six-year delay for a two-year commitment. That's – it is a long delay, and it's – we've conceded that's presumptively prejudicial. However, it is a presumption, and it's easily met here by the State. Every piece of evidence given to the district court indicated that all continuances were requested by Petitioner. Petitioner says he acknowledges acquiescence. There was affirmative request for continuances, for changes of counsel, for self-representation. This was an extremely litigious defendant. And as an aside, our argument is not that the appellant didn't have the right to pursue those actions. He did, and it's not our contention that that is what delayed this. Our argument is that those proceedings, especially the one to find the SVP Act unconstitutional, is relevant to his motive. It corroborates the district court's finding, as it pointed out, that his motive was to get this overturned so he wouldn't have to be – to have the hearing in the first place. And consistent with that is the fact that he didn't assert his speedy trial right until this court had denied – finally denied his last attempt or his appeal from the denial of his claim that the SVP Act was unconstitutional. Only then did he say, let's go – let's go to the – let's go to trial on the commitment. And that was when? That was in 2003. And when did the matter then go to trial? The matter then went to trial in 2004. Now, appellant accepts ownership of that one-year span, and the district court found as much that he was at fault for that year after he requested his speedy trial right, which essentially cancels it out. During that year after – from 2003 to 2004, he was actually requesting – it was a request for a continuance, change of counsel. It was basically consistent with the claims that had been made before. All the evidence below indicates that the continuances were all at counsel's – I'm sorry, counsel's – appellant's behest. There was no evidence to the contrary. There was no evidence that the State – or suggestion that the State ever actually requested a continuance. Now, what it's – It's also true, I think, that he was not simply facing an additional two years of confinement because that could have been re-imposed, I guess. Every two years, he could get another two-year sentence. Isn't that correct? That is correct. So – and there's no end to that? An end to successive two-year commitments? I actually don't know if there's a limit on two-year – Okay. – consecutive two-year commitments. I would also point out that it's not irrelevant that Mr. Page is still under sentence for his convictions. This was not an issue of a pretrial defendant being imprisoned because – because a petition had been filed and he has not yet been found guilty. He has been found guilty – this is a parole release date issue. He was eligible for release on parole in 97. He could be incarcerated, depending on the administrative rules and what he does in prison, until 2010. That's the end of his sentence. He's still under sentence. It is. One might say in a rational system it might seem a little bit strange to let somebody out on parole and then say, we've let you out on parole because you deserve to be on parole, but you're so dangerous we can't let you be on the streets, so we're starting a civil commitment proceeding. I agree with that. And I don't know the origins of the legislative history behind the SVP Act, but I suspect that the concerns raised by the SVP Act were not – or had not been addressed in the parole eligibility rules and perhaps could not be addressed by the collateral SVP commitment proceedings were created. I don't know. But I see your point and I agree with that. It's hard not to look at this, even though I understand your argument that he's requested many of the delays and everything, but it's sort of the same idea as behind the Speedy Trial Act. Even though he was in no hurry to get moving, somebody really should have tried to move this thing along, perhaps the superior court, perhaps the state. But just because one of the parties is in no hurry doesn't – it's not really good to have a six-year delay for a two-year commitment hearing. I agree with that. And I agree with the district court's statement similarly that the prosecutor or the superior court could have been more active, could have been more affirmative. Basically, what this distills to is an argument by Appellant that the state was too agreeable because all continuance were affirmatively requested by Petitioner. Petitioner wasn't acquiescing. He was actually asking. And on prejudice, there's no claim that it impaired his ability to defend his case. And there's an argument in the briefs that there's no pretense of rehabilitation here. In fact, Mr. Page has refused treatment and could have actually benefited by treatment because the commitment proceedings are based on an evaluation of his state at the time he is about to be released. During this delay, there was no attempt, in fact, often a refusal to participate in therapy by Mr. Page. I think he's hard-pressed to argue that he has languished without any hope of rehabilitation. And a little out of order here, as far as assertion of the right, Mr. Page didn't assert it until 2003. There has been, there was an argument in the briefs at least, that his prior motion should be considered. He had a motion to substitute counsel. He had a motion to relieve counsel and substitute in himself. Those should be construed as an objection or a frustration with his right to speedy trial. Well, the fact that he filed a speedy trial motion pro se, handwritten by himself, demonstrates that he knew how to assert his speedy trial rights when he wanted to. He didn't do that until 2003, and then he caused that subsequent delay up to 2004, as the District Court found. And that's not denied in the briefs. As for the uncertified issue, it wasn't briefed by the State because it's uncertified, and I'm not prepared to address it either. I'd be happy to attempt to answer any questions the Court might have about that or the certified issue. But if not, I would submit it. I don't see any other questions. Thank you very much, counsel, for your argument. Thank you. Mr. Murray, do you have a moment or two for rebuttal? Very briefly, Your Honor. I think, again, it's important to look at this in context. Initially, the District Court, when it tried to determine whether, indeed, there was a facial speedy trial claim because this was a civil proceeding about which it was being addressed, the commitment proceeding, Judge Walker, I think quite appropriately, looked for other District Court decisions that might have an analogous problem. And, you know, I start from the point of acknowledging that his finding, based on the Atwood decision that he looked at, that the full panoply of constitutional rights does not apply because this is civil proceeding is technically true. That's where Mr. Page has to start. But in context, we have a convicted defendant who is sent to a standard CDC institution for punishment in a determinate sentence, not one hour of treatment in all those 10 years that he's there. Not one. Okay? But this is a system that says he's an SVPA, he must have treatment, he must be cleared before he can go out into the world, one month before he is eligible for parole. He's eligible in December of 1997. In fact, the exquisite irony here is that it's Christmas Eve when the probable cause order issues. But it's November, one month before that eligibility, that the people file the petition. Now, I realize this Court is not here to sort out the SVPA, but my heavens, what kind of a society are we? This man did refuse treatment. Matter of fact, he refused even to be examined by the doctors who were going to testify for the State in the hearing that eventually took place. Is he a little bit cynical? I'm afraid he probably is, because nobody was interested in treating him while he was just plain Prisoner 32798. But all of a sudden, when he was eligible for parole, society became concerned about people who might be harmed by his presence on the street. I apologize. Thank you very much for hearing me. Roberts. Thank you both for your arguments. Very interesting case. It will be submitted for decision.
judges: Canby, Thompson, Hawkins